UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| TIMOTHY H. THORPE, ) | |
| ) | |
| Debtor. ) | |
| ------------------------------------------------- ) | |
| ) | |
| JEANA K. REINBOLD, as Chapter 7 ) | Case No. 4:16-cv-04041-SLD |
| Trustee of the Estate of Timothy H. Thorpe, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| BELVA J. THORPE, ) | |
| ) | |
| Defendant-Appellee. ) | |
| ) | |

ORDER

Before the Court is the bankruptcy trustee's ("the trustee") appeal from the bankruptcy court's denial of summary judgment for the trustee as plaintiff in an adversary case related to the bankruptcy estate, and grant of summary judgment to Belva Thorpe, the defendant in that proceeding, ECF No. 1. For the following reasons, the Bankruptcy Judge's order is AFFIRMED as explained herein.

**BACKGROUND**[1]

Belva and Timothy Thorpe were married on December 6, 1986. They bought a house together, located at 1104 15th Street, Silvis, Illinois ("the house"), by a Corporation Warranty Deed, dated July 22, 1987, which identified the grantees as "Timothy H. Thorpe and Belva J.

---

[1] Unless otherwise noted, the facts recounted here are drawn from Appellant's brief, ECF No. 3, and from the Bankruptcy Judge's Opinion, Appellant's Br. Ex. A 52– 72, ECF No. 3-1 ("BR Op."). When citations are made to the docket of the adversary proceeding in the bankruptcy court from which appeal is taken, *Reinbold v. Thorpe* (*In re Thorpe*), 13-81262 (Bankr. C.D. Ill. 2016), they take the form "BR __."

1

Thorpe, husband and wife, as joint tenants and not as tenants in common." The deed was recorded on July 23, 1987 with the Rock Island County Recorder. They occupied the house together as the marital home.

On October 4, 2012, Belva filed a petition to dissolve the marriage. Timothy then filed a petition for bankruptcy protection under Chapter 7 on June 21, 2013. A bankruptcy estate was created and a trustee appointed. The filing of the petition caused an automatic stay to issue on pending cases against Timothy, including the divorce proceedings. *See* 11 U.S.C. § 362(a). In his petition for bankruptcy, Timothy reported the house among his assets, and valued it at $145,000, subject to no secured claims.

On July 16, 2013, the divorce court held an evidentiary hearing on the grounds for dissolution of the marriage, and to determine the division of debts and marital property. On July 29, 2013, Belva filed a motion to lift the automatic stay in the bankruptcy court, arguing that the stay should be lifted so as to allow the divorce case to proceed. On July 31, 2013, back in the divorce court, the judge issued a written order based on the earlier hearing. He found that grounds for dissolution of the marriage were established, and that since Timothy had dissipated $98,000 in marital assets, the house (which the divorce court valued at $125,000) would be awarded to Belva "free and clear of any claim of [Timothy]." BR Op. 3.

Judgment did not enter in the divorce case for two years, however. Initially, the bankruptcy court ordered that the stay remain in effect as to all property that had become property of the bankruptcy estate when the case was filed. Eventually, on April 14, 2015, the bankruptcy court modified the automatic stay to permit the divorce court to enter its judgment. This judgment entered on June 2, 2015, awarding the house to Belva as a result of Timothy's dissipation of assets, subject to the determination of the trustee's rights by the bankruptcy court.

While the stay was still in full effect, on November 10, 2014, the trustee had filed an adversary proceeding against Belva in the bankruptcy court. The two-count complaint sought (I) to avoid any transfer of Timothy's one-half interest in the house by the divorce court that had occurred by the filing of the dissolution action, and (II) the right to sell that interest in order to settle the debts of the estate pursuant to 11 U.S.C. § 363(h).[2] Bankr. Compl. 3–5, BR 1. In late 2015, after the entry of the divorce court's judgment, the parties each moved for summary judgment on both counts. The Bankruptcy Judge granted judgment for Belva on both counts, precipitating the trustee's appeal.

The Bankruptcy Judge reasoned, as to Count I, that no transfer of property from Timothy to Belva was effected by operation of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/101–5/802 ("the IMDMA") upon institution of divorce proceedings, and that thus, there was no transfer for the trustee to avoid. BR Op. 7–12, 20–21. As to Count II, the Bankruptcy Judge held that the divorce court's judgment had deprived the bankruptcy estate of all interest in the house, that the estate was not entitled to avoid that transfer under 11 U.S.C. § 544, and that therefore, the house was not subject to sale by the estate under § 363(h). BR Op. 12–21. In so holding, the Bankruptcy Judge rejected the trustee's argument that Belva's failure to record a *lis pendens* notice prevented her from enforcing the divorce court's judgment. *Id.* at 12–20.

## DISCUSSION

### I. Legal Standard on Appeal from a Bankruptcy Court's Order

Bankruptcy judges do not "enjoy the protections of Article III [of the United States Constitution]"; rather, their appointment is authorized by Congress to assist the Article III courts in their work. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938 (2015). District courts therefore have jurisdiction to hear appeals from the final orders of bankruptcy courts. 28

---

[2] Subsection (h) permits the sale of property in which the debtor had joint tenancy.

3

U.S.C. § 158(a). District courts apply a dual standard of review to bankruptcy appeals: findings of fact are reviewed for clear error, and conclusions of law de novo. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir.2011); Fed. R. Bankr. P. 8013. Under the clearly erroneous standard, "[i]f the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the evidence differently." *Stamat*, 635 F.3d at 979 (quotation omitted).

**II.     Legal Framework of Bankruptcy Estate's Claims on Debtor's Property**

When a debtor commences a bankruptcy case under Chapter 7, an estate is created consisting of, among other things, "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). A trustee for the estate is elected by the debtor's creditors; or, as commonly and as here, the interim trustee appointed by the bankruptcy court continues as trustee throughout the proceedings. *See id.* §§ 701, 702. The trustee is charged with shepherding the estate through the pendency of the proceedings, and with "collect[ing] and reduc[ing] to money the property of the estate." *Id.* § 704(a)(1). Although federal law determines whether the debtor's property becomes property of the estate, *In re Marrs-Winn Co., Inc.*, 103 F.3d 584, 591 (7th Cir. 1996), the debtor's property interests themselves are determined in the first instance by local law, *Butner v. U.S.*, 440 U.S. 48, 54–55 (1979).

However, the bankruptcy code grants the estate something slightly different from the debtor's pre-petition property interests: "what the debtor could *convey* under local law rather than only what the debtor *owned* under local law." *Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir. 1989).

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

4

(1)     a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2)     a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3)     a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a). In other words, the estate has ownership rights in the debtor's former property equivalent to those that would have been enjoyed by the hypothetical lienholder, execution-holder, or bona fide purchaser who acquired her interest at the moment the estate was created. It is not that the estate actually is or was any of those things; rather, the estate can take title ahead of other claimants if the hypothetical transferee, lienholder, or judgment creditor would be able to do so. *See Plunkett*, 877 F.2d at 515 ("The statute mentions 'transfer' only in the sense of the *hypothetical* transfer that measures the trustee's rights: if a hypothetical bona fide transferee from the debtor would come ahead of the 'true' owner's rights, then the trustee takes ahead of the true owner.").[3] This so-called strong-arm power permits the estate to take interests that a bona fide purchaser could secure, but to which the debtor may have lacked good title. *Id.* at 516.

---

[3] This system removes the incentive for creditors to get a judgment against particular property in the debtor's estate if doing so would have the effect of giving that creditor priority over others. Because the estate already has the rights of lienholder and judgment creditor, it effectively secures those rights for all the creditors. *Plunkett*, 877 F.2d at 514–15.

Section 544 does not transform the underlying property interest that the estate gets. "[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less. Section 541 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.'" *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787). Nor does it extend the estate's interest beyond what could be enjoyed by the hypothetical transferee or creditor. *Plunkett*, 877 F.2d at 515 ("Sections 544(a)(1) and (2) follow state law, however, in giving the trustee no *greater* rights than the judgment creditor would have.").

### III. Legal Framework of Illinois Divorce Courts' Property Adjudications

In Illinois divorce cases, courts start by assigning to each spouse his or her "non-marital property." 750 ILCS 5/503(d). Marital property is, with some exceptions not relevant here, all the property that either spouse acquired after the marriage, *id.* 5/503(a). This property the court "shall divide . . . without regard to marital misconduct in just proportions considering all relevant factors, including . . . the dissipation by each party of the marital property . . . ." *Id.* 5/503(d). "The Act does not mandate an equal division of the marital property. So long as the trial court has considered all the factors enumerated in section 503 of the Act, its discretion will only be reversed where no reasonable person would take the view adopted by the trial court." *In re Marriage of Flemming*, 493 N.E.2d 666, 668 (Ill. App. Ct. 1986).

"Each spouse has a species of common ownership in the marital property which vests at the time dissolution proceedings are commenced and continues only during the pendency of the action."[4] 750 ILCS 5/503(e). "[T]he filing of a petition for dissolution of marriage creates and

---

[4] "Illinois differs from states where spouses have current ownership interests in marital property even before a dissolution proceeding is commenced, such as community property states, and also differs from states where an

6

vests a contingent interest of each spouse in all property of either spouse constituting 'marital property.'" *Kimmell*, 480 B.R. at 886. "This contingent interest ripens into a full ownership interest for any property distributed to such spouse when the divorce court enters an order of distribution or final judgment." *In re Dzielak*, 435 B.R. 538, 547 (Bankr. N.D. Ill. 2010). When this happens, the party to whom the property is not transferred sees his interest extinguished entirely. *See, e.g., In re Zachmann*, 2013 WL 1316647 (Bankr. N.D. Ill. 2013) ("[A]t that point, the estate's interest 'vanishes . . . . The trustee inherited the debtor's contingent equitable interests but that contingency never matured; instead, the contingency vanished when (after the lifting of the automatic stay) the Family Court awarded all of the [property at issue] to Skorich.'" (quoting *Ford v. Skorich (In re Skorich)*, 482 F.3d 21, 24 (1st Cir. 2007))).

## IV. Analysis

On appeal, the trustee argues that the divorce court's award of Timothy's interest is ineffective against the bankruptcy estate because the bankruptcy petition was filed before the divorce court's judgment entered, Appellant's Br. 21–33; and that, as equivalent to a bona fide purchaser of Timothy's interest in the house, the bankruptcy estate is entitled to avoid the divorce court's judgment because no *lis pendens* notice was ever filed, *id.* at 41–56.

The trustee's first argument can be quickly disposed of. She claims that she "is clearly not bound by the Divorce Judgment's retroactive award of the [house] to Belva . . . because [her] rights as purchaser or lien creditor attached to the [house] before the entry of the Divorce Judgment, and were reserved in the Stay Relief Order and Divorce Judgment." Appellant's Br. 27–28. On the trustee's theory, when the estate acquired Timothy's interest in the house, Belva's interests in Timothy's half of the house "were not fully established," *id.* at 31, and so the estate's

---

ownership interest in marital property is only established upon an actual order by a divorce court." *Voiland v. Kimmell (In re Kimmell)*, 480 B.R. 876, 886 (Bankr. N.D. Ill. 2012)

7

interest "was not preempted" by the ultimate disposition of the property made by the divorce court, *id.* at 32. But this misunderstands the nature of the estate's and Belva's interest in the house. Timothy initially owned the house in a joint tenancy with Belva, giving him the right to transfer his half of the house freely (which would have converted his joint tenancy with Belva to a tenancy in common). *Sathoff v. Sutterer*, 869 N.E.2d 354, 356 (Ill. App. Ct. 2007). Upon the filing of the divorce petition, each spouse acquired a contingent interest in all of the marital property, including each other's half of the house.[5] 750 ILCS 5/503(e); *see also In re Kimmell*, 480 B.R. at 886. From that point on, while each spouse could still transfer his or her interest, he or she would have done so subject to the contingent interest of the other spouse. 750 ILCS 5/503(d); *In re Dzielak*, 435 B.R. at 547. Timothy's interest in the house when the estate took it was subject to Belva's interest, which was contingent on the divorce court's ultimate ruling. *See Moody*, 734 F.2d at 1213. Nothing about the bankruptcy court's jurisdiction over Timothy's estate defeats Belva's interest, or its ultimate ripening into exclusive ownership.

What might nevertheless defeat Belva's interest, as the bankruptcy court recognized in its discussion of the complaint's second count, is the estate's right to avoid transfer on whatever

---

[5] The bankruptcy court thought that Belva "received no transfer of any further interest in the marital real estate by operation of section 503(e)" at the time of the filing of the petition for dissolution. BR Op. 12. It explained this opinion by a scholarly excursus into the legislative history of 503(e), determining that the unusual phrase "a species of common ownership" was adopted by Illinois solely in order to prevent divorce adjudications from causing taxable transfers of separately owned property between spouses, and had no application to property already held in joint tenancy between spouses. *Id.* In other words, "Belva's joint tenancy ownership interest, of record since 1987, was not altered when she filed the divorce petition." *Id.* This cannot be right, however, because the "species of common ownership" authorized by 503(e) is not the same as a joint tenancy, under which, as noted above, either party can transfer her portion of the tenancy clear of any encumbrance. Here, while Timothy could have transferred his interest in the house after the filing of the divorce petition, 750 ILCS 5/503(e) ("Any such interest [as a spouse has after initiation of divorce proceedings in marital property] shall not encumber that property so as to restrict its transfer, assignment, or conveyance . . . ."), he would have done so subject to a vested contingent interest that might, as actually happened, ripen into full ownership on his soon-to-be-ex spouse's part. *See In re Dzielak*, 435 B.R. at 547. More to the point, the divorce court is only authorized to equitably distribute *marital* property. 750 5/503(d). Since assets are only classified as marital and non-marital by the divorce court and for purposes of the divorce proceedings during their pendency, the divorce court would be required to treat any property not classified marital property as separate property, and assign that property to its owner upon the conclusion of the divorce proceedings. *Id.* However, as explained below, the bankruptcy court's order in this case ultimately turned on the question of whether the estate is entitled to avoid what was undisputedly a transfer effected by the divorce court's judgment.

grounds would have been available to a bona fide purchaser of the property at the time of the estate's creation. The bankruptcy court determined that no transfer of property to Belva occurred upon the filing of the divorce petition, and rejected Count I of the trustee's adversary claim for that reason. BR Op. 12; *see supra* note 5. But by the time the parties moved for summary judgment on the trustee's claims, the automatic stay had been lifted and the divorce court had entered its judgment. The trustee is clearly seeking to avoid the transfer effected by the divorce court's judgment, which awarded the house to Belva free and clear. *See* Appellant's Br. 34. This is what is at stake in the complaint's second claim, which seeks to secure to the estate the right to sell the house. *See* Bankr. Compl. 4–5.

A bona fide purchaser under Illinois law is one who "takes title to real property in good faith for value without notice of outstanding rights or interests of others. A bona fide purchaser takes such title free of any interests of third persons, except such interests of which he has notice." *Daniels v. Anderson*, 642 N.E.2d 128, 133 (Ill. 1994). "[A] purchaser cannot be a bona fide purchaser if he had actual or constructive notice of the outstanding rights of other parties to the property." *U.S. Bank Nat. Ass'n v. Johnston*, 55 N.E.3d 742, 752 (Ill. App. Ct. 2016). However, § 544 "provides the trustee with the status of creditor or purchaser without knowledge, i.e., without *actual notice*." *Sprague v. Kelly (In re Kelly)*, 29 B.R. 708, 710 (Bankr. D. Me. 1983). A trustee exercising the strong-arm power to assert the rights of a bona fide purchaser thus may only be supposed to have knowledge of claims of which such a buyer would have been on *constructive* notice, regardless of what the trustee actually knew at the time of the estate's creation. For this reason, whether the estate can avoid the divorce court's award in the instant case turns on whether a purchaser of Timothy's interest would have been on constructive notice of Belva's contingent interest.

9

Constructive notice is "knowledge that the law imputes to a purchaser, whether or not he had actual knowledge at the time of conveyance." *Hachem v. Chicago Title Ins. Co.*, 46 N.E.3d 879, 887 (Ill. App. Ct. 2015). There are two kinds of constructive notice—record notice, and inquiry notice. *US Bank Nat. Ass'n v. Villasenor*, 979 N.E.2d 451, 465 (Ill. App. Ct. 2012).

Record notice is what is shown in the records of the office of the recorder of deeds; in addition,

> [i]n Illinois, "[a] purchaser of land is charged with constructive notice not only of whatever is shown in the records of the office of the recorder of deeds, but in addition, with matters affecting the title of the land which appear in the records in the circuit, probate, and county courts in the county where the land is situated."

*Hachem*, 46 N.E.3d at 887 (quoting *Eckland v. Jankowski*, 95 N.E.2d 342, 344 (1950)).

Inquiry notice is, as the name suggests, more empirical. Under inquiry notice, "a purchaser having notice of facts that would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry." *Bank of New York*, 860 N.E.2d 1113, 1118–19 (Ill. App. Ct. 2006). However, a trustee is chargeable only with certain kinds of inquiry notice, because a trustee cannot be assumed to have notice of claims to title via actual knowledge. 11 U.S.C. § 544(a). "[S]ome types of facts that would create inquiry notice under state law would not create constructive notice under bankruptcy law." *Olsen v. Heaver (In re Heaver)*, 473 B.R. 734, 741 (Bankr. N.D. Ill. 2012), *aff'd sub nom. Branch Banking & Trust Co. v. Olsen*, No. 14 C 50027, 2014 WL 2154906 (N.D. Ill. May 22, 2014). Facts outside of a property's chain of title cannot trigger the trustee's duty of inquiry; facts contained in that chain, on the other hand, can. *Id; see Olsen v. Bank One, Rockford, N.A. (In re Bruder)*, 207 B.R. 151 (N.D. Ill. 1997) ("The only possible way any of these three could be put on inquiry notice, therefore, is if there are matters of record which would put them on inquiry notice—that is, only

10

those matters of which they are held to be on constructive notice can be used to determine whether they were put on inquiry notice.").

The trustee contends, as she did below, that Belva's failure to record a *lis pendens* notice means that a hypothetical purchaser would not have been on constructive notice of Belva's interest, and the estate may take title ahead of her. *Lis pendens*, latin for "pending lawsuit," means literally that there is a suit pending that affects the right, title or interest to the property in question. *Black's Law Dictionary* (10th ed. 2014). The term also refers to notice, via record in the chain of title to real property, that such a suit is pending. *Id.* As the bankruptcy court laid out in detail in its opinion, *lis pendens* doctrine developed in Illinois initially via a 1917 statutory codification of the common law, which provided that merely filing a lawsuit placed subsequent purchasers and interested parties on notice that there was a cloud on the property's title. BR Op. 14; *see Moore v. Zelic*, 170 N.E. 664 (Ill. 1930). In 1963, the statute was amended to reflect the increasing complexities of litigation—purchasers were now not automatically placed on constructive notice that a case was pending, but were placed on such notice if a *lis pendens* notice was recorded in the relevant county recorder's office. 735 ILCS 5/2-1901.

The crux of the trustee's disagreement with the bankruptcy court is that, in the trustee's view, Illinois's *lis pendens* statute, as enacted in 1963, became the exclusive means by which a potential buyer of property could be placed on constructive notice of litigation involving the property. The trustee construes the statute as placing buyers on notice *if and only if* a *lis pendens* notice is recorded. The bankruptcy court held otherwise, stating that while, if a *lis pendens* notice is filed, later buyers are certainly on constructive notice, there are other means by which buyers can be placed on notice and thus bound by pending litigation to which they are not parties. In other words, the bankruptcy court held that *lis pendens* notice was sufficient but not

11

necessary to place buyers on notice, while the trustee maintains that is it both sufficient and necessary.

The trustee argues that *In re Kelly*, 1989 WL 141393 (Bankr. N.D. Ill. 1989) held that the 1963 amendment of the *lis pendens* statute changed the law so that filing of a *lis pendens* notice became the exclusive means of putting potential buyers of property on constructive notice. Appellant's Br. 45–51. *Kelly* does indeed hold this, but the Court has been unable to find subsequent cases in either Illinois or federal court, bankruptcy or otherwise, that follow *Kelly*'s lead, or even cite it.[6] Instead, as the Bankruptcy Judge observed, state and federal courts have continued to cite *Eckland v. Jankowski*, 95 N.E.2d 342 (1950), for the proposition that record notice can derive from information available both at a county clerk's office and from local court records. *See Hachem v. Chicago Title Ins. Co.*, 46 N.E.3d 879, 887 (Ill. App. Ct. 2015); *see also Admiral Builders Corp. v. Robert Hall Vill.*, 427 N.E.2d 1032, 1036 (Ill. App. Ct. 1981) ("The Illinois statute concerning lis pendens does not create an obligation to file lis pendens notice. The statute provides only that the filing of such notice will serve to bind purchasers of property pendente lite to such litigation as if they had been a party thereto."). The Court sees no reason to think that the Illinois Supreme Court would interpret the *lis pendens* statute as having created the exclusive means of constructive notice. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (stating that a federal court's role in applying state law "is to interpret the state's law as we predict the state's highest court would.").

The trustee argues that such a construal of the Illinois *lis pendens* statute provides prospective buyers of property with no more protection against an unknown encumbrance than

---

[6] The other case that the trustee cites, *Sobilo v. Manessa*, 479 F.Supp.2d 805, 823–24 (N.D. Ill. 2007) does not stand for the proposition that the *lis pendens* statute made *lis pendens* notices the exclusive form of effecting notice of pending litigation. Representatively: "Conversely, if no *lis pendens* notice is filed, *and the subsequent purchaser did not otherwise have notice of the pending suit*, he takes the property free of any interest determined in the suit." *Id.* at 824 (emphasis added).

12

they had before the 1963 amendment. Appellant's Br. 33–34. But this is not so. The rule prior to the enactment of the amendment bound later takers of the property to all litigation touching the property, no matter where it was conducted. The law as amended provides that filing of a *lis pendens* notice places subsequent purchasers on constructive notice. *Admiral Builders*, 427 N.E.2d at 1036. To assure themselves of good title, buyers should now check chain of title and local court records; if they do so and discover nothing that alerts them to litigation involving the property, their position as bona fide purchasers is secure. Before the 1963 amendment, any litigation not recorded in these offices—such as a divorce proceeding not instituted in that jurisdiction—would have bound later buyers nonetheless; after the amendment, a bona fide purchaser would be entitled to avoid such a judgment if no *lis pendens* notice had been filed.

In addition, the trustee does not explain why, if the Illinois legislature indeed sought to make *lis pendens* notice the only form of constructive notice effective for pending litigation, it did not then say that it was doing so in the statute that provided for *lis pendens* notice. 735 ILCS 5/2-1901 simply states that notice of an action affecting real property filed in the county recorder's office "shall . . . be constructive notice" to purchasers. From the creation of a *form* of constructive notice, the trustee seeks to infer the exclusion of all other forms of constructive notice, despite the fact that, on its face, the *lis pendens* statute is not only just one kind of constructive notice, but a specialized and specific one, one that binds a party to the outcome of litigation "to the same extent and in the same manner as if he or she were a party thereto." *Id.* Indeed, particularly with respect to inquiry notice, which charges potential buyers with knowledge of things that a "prudent man" would discover in the ordinary course of property purchase, *Bank of New York*, 860 N.E.2d at 1118, it is hard to see what purpose there could be in absolving a purchaser of land of ordinary prudence, if only he remembers to check the county

13

recorder's office. As the bankruptcy court noted, the *lis pendens* rule exists in part to prevent unscrupulous owners from unloading property at more than its value, and to prevent unscrupulous buyers from abetting them in that task by claiming an implausible but legally defensible ignorance of clouds to title. BR Op. 14 n.8. Absolving buyers of any notice rules founded in ordinary prudence does little to protect buyers and much to encourage unscrupulous behavior by sellers. The trustee does not explain why the State of Illinois would wish for or enact such a regime.

If conventional forms of constructive notice can be imputed to the estate as bona fide purchaser, then both record and inquiry notice apply and create notice of Belva's pending divorce claim. Record notice imputes to a prospective buyer not only knowledge that could have been obtained by looking at the grantor-grantee index in the office of a county's Recorder of Deeds, but also the probate, circuit, and county court records. See *In re Crane*, 742 F.3d 702, 707 (7th Cir. 2013); *In re Ehrlich*, 59 B.R. 646, 650 (Bankr. N.D. Ill. 1986). A prospective buyer thus was on notice that Belva's case was pending in the Illinois circuit court where the house was located.

In addition, as the Bankruptcy Judge explained, a purchaser of Timothy's interest would have been on inquiry notice of Belva's claim. Belva's name was on the deed to the house as a joint tenant with Timothy. "[P]urchasers are deemed to have constructive knowledge of the contents of duly recorded instruments within the chain of title in the grantor-grantee index, facts within such documents may be sufficient to put the Trustee on inquiry notice to the extent apparent on the face of the document." *Heaver*, 473 B.R. at 741. A purchaser would therefore have known that Timothy was selling his interest in his marital home, which he held in joint tenancy with his wife. In addition, Timothy moved out of the house sometime before December,

14

2012, BR Op. 2, leaving Belva as the sole joint tenant in possession before the filing of Timothy's bankruptcy. "Where there is a party in possession other than the vendor, the purchaser has a duty to inquire of that party as to his tenure and interest in the premises. The prospective purchaser is charged with knowledge of facts that are inconsistent with the claim of ownership by the record owner." *Ehrlich*, 59 B.R. at 650 (citation omitted).

Belva's recorded joint tenancy with Timothy, coupled with the fact that they were clearly spouses but that only she occupied the marital home, would have triggered a duty to inquire of both Timothy and Belva about the nature of their interest in the house, which inquiry would swiftly and sufficiently have revealed that the house was subject to the divorce proceedings. Traditionally, the possession of property by someone other than the vendor has been taken to trigger a duty of inquiry only when the possessor does not appear to hold title or legal right to the property. *See, e.g., In re Kasparek*, 426 B.R. 332, 347 (B.A.P. 10th Cir. 2010) (holding that a duty of inquiry was not triggered as to a lessee in possession where the lessee's right derived from a lease with a joint tenant). This was clearly not the case with Belva's sole occupancy of the house. But the obligations of inquiry notice are rooted in practicality, not dry formality; "[o]ne having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry." *Smith v. Grubb*, 84 N.E.2d 421, 428 (Ill. 1949). It would be obvious enough simply from the deed to the house that Timothy was attempting to convey his half of an interest in his marital home. A prudent buyer would have inquired as to the nature of the interest his soon-to-be tenant in common, Belva, had in the home, as he could have reasonably expected that interest to substantially affect the nature of his own. *See* 3 *Patton and Palomar on Land Titles* § 677 (3d. ed) (describing as a factor that

may rebut the legal presumption in favor of record title "whether property conveyed by separate deed of husband or wife was their homestead").

A purchaser of Timothy's half of the house would have been on constructive notice, via both record and a duty to inquire, of the divorce case. Thus, as the Bankruptcy Judge held, the trustee is not entitled by 11 U.S.C. § 544(a) to avoid the divorce court's final judgment awarding Timothy's interest in the house to Belva free and clear. The trustee is not entitled to avoid the transfer effected by the IMDMA, as she alleged in Count I of her adversary complaint, nor is she entitled to effect a sale of the house as an asset of the estate pursuant to 11 U.S.C. § 363(h), as she alleged in Count II. The Bankruptcy Judge's grant of summary judgment for Belva on both counts was proper.

## CONCLUSION

Accordingly, the Bankruptcy Judge's order is AFFIRMED. The Clerk is directed to enter judgment and close the case.

Entered this 16th day of March, 2017.

s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE